# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| MONEY CENTER OF AMERICA, INC., et al., | : | Case No. 14-10603(CSS) |
| | : | Jointly Administered |
| | : | |
| Debtors. | : | |
| _____ | : | |
| MARIA APRILE SAWCZUK, solely in her Capacity as Trustee of the Liquidating Trust of Money Centers of America, Inc. and Check Holdings, LLC.: | : : : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Adv. Proc. Case No.: 15-50250(CSS) |
| | : | |
| CHRISTOPHER WOLFINGTON, JASON WALSH, AND LAUREN ANDERSON, | : : : | Adv. Docket No.: 10 |
| | : | |
| | : | |
| Defendants. | : | |

## OPINION[1]

**COOPER LEVENSON, P.A.**
Erin K. Brignola
30 Fox Hunt Drive
Bear, DE  19701

**Counsel for Defendant,
Jason Walsh**

**GOLDSTEIN & McCLINTOCK, LLLP**
Maria April Sawczuk
1201 North Orange Street, Suite 7380
Wilmington, DE  19801
     -and-
Robert S. Michaels
111 W. Washington Street, Suite 1221
Chicago, IL  60602

**Counsel for the Liquidating Trust**

---

[1] "The court is not required to state findings or conclusions when ruling on a motion under Rule 12…" Fed. R. Bankr. P. 7052(a)(3). Accordingly, the Court herein makes no findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

Dated: September 8, 2017
Sontchi, J. _____

# INTRODUCTION

Before the Court is a motion to dismiss the First Amended Complaint (the "Complaint") brought by the Chapter 7 Trustee of the above-captioned estate. The Complaint alleges breach of fiduciary duty, aiding and abetting breach of fiduciary duty, corporate waste, conversion, recovery of avoidable transfers, and equitable subordination. For the foregoing reasons, Defendant Walsh's motion to dismiss the Complaint is denied.

# FACTUAL & PROCEDURAL BACKGROUND

## A. The Parties

In 1997, Money Centers of America, Inc. ("MCA") was founded by Christopher Wolfington ("Wolfington"), who served as MCA's CEO and Board Chairman. Wolfington went on to form Check Holdings, LLC ("Check Holdings") in 2011. Both companies were based out of King of Prussia, Pennsylvania and were located in the same office. MCA exercised complete control over Check Holdings. Jason "Jay" Walsh ("Walsh") and Lauren Anderson ("Anderson") served as MCA's Chief Financial Officer and Director of Corporate Administration and Wolfington's personal assistant, respectively.[2]

---

[2] Adv. Pro. No. 15-50250, D.I. 3, ¶ 1.

MCA and Check Holdings were formed to provide certain financial services to casinos, such as cash-access services, in exchange for a fee.[3] Based on MCA's public filings and financial statements, the company was insolvent since March 31, 2003. MCA remained unprofitable from this point until the MCA Petition Date, on May 21, 2014.[4] Check Holdings subsequently filed for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware two days later, on May 23, 2014.[5] Notably, the Trustee asserts that as early as June 16, 2003, MCA's outside auditors expressed substantial doubt regarding MCA's ability to continue as a going concern.[6]

The Trustee alleges that Wolfington and Walsh "used the company (in the words of one lender) as a 'personal piggybank' to fund their lavish lifestyles, essentially draining the company of its assets."[7] The alleged looting "took many forms, but most egregiously included: Defendants' use of MCA funds to pay more than $1.3 million of personal credit card bills and other personal expenses; Wolfington's and Walsh's wrongful diversion of more than $2 million of MCA funds to or for the benefit of side businesses they owned and/or controlled; and direct transfers of MCA funds to bank accounts of Wolfington (or

---

[3] *Id.* at ¶ 16.

[4] *Id.* at ¶ 5.

[5] *Id.* at ¶ 6.

[6] *Id.* at ¶ 17.

[7] *Id.* at ¶ 2.

his relatives), Walsh, and Anderson, well in excess of any amounts MCA legitimately owed them."[8]

**B. Walsh Files Voluntary Petition for Relief Under Chapter 7**

Walsh served as CFO of MCA from June 14, 2005 to July 31, 2010.[9] On April 8, 2011, Walsh filed a Voluntary Petition seeking relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Walsh Chapter 7").[10] Following a Meeting of Creditors, on September 9, 2011, after a no-asset finding was issued by Walsh's Chapter 7 Trustee, Walsh received a Discharge Order.[11]

**C. The Trustee's First Amended Complaint**

On April 28, 2015, the Trustee filed its First Amended Complaint for Breach of Fiduciary Duty, Aiding and Abetting Breach of Fiduciary Duty, Corporate Waste, Conversion, Recovery of Avoidable Transfers, and Equitable Subordination.[12] The Complaint contains eleven counts against defendants Wolfington, Anderson, and Walsh. With respect to Walsh, only three counts are brought: Count V for Avoidance and Recovery of MCA Actual-Intent Fraudulent Transfers; Count VI for Avoidance and

---

[8] *Id.* at ¶ 2.
[9] D.I. 10-1, p. 2.
[10] Case No. 11-12-12863-SR (the "Walsh Chapter 7").
[11] D.I. 10-2.
[12] D.I. 3.

4

Recovery of MCA Constructive Fraudulent Transfers; and Count XI for Determination of Nondischargeability.[13]

On July 30, 2015, Walsh filed a Motion to Dismiss the Trustee's First Amended Complaint for failing to set forth a claim upon which relief may be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6).[14]

## DISCUSSION

### A. This Court Has Jurisdiction to Determine the Dischargeability of the Trustee's Claims Against Walsh

This Court has concurrent jurisdiction to determine that the Trustee's claims against Defendant Walsh are nondischargeable. The court in *In re Strano*,[15] after a thorough analysis of both the legislative history of the Bankruptcy Act of 1898, as amended in 1970, and its successor, the Bankruptcy Code of 1978, as well as case law, held that "[s]ince unscheduled, intentional tort debts are treated under § 523(a)(3), a complaint to determine nondischargeability may be brought at any time and in any forum."[16] Thus, "a debtor who fails to schedule an intentional tort debt before the bar date loses the benefit of both the bar date and the exclusive jurisdiction of the bankruptcy court."[17] This view has been widely endorsed and found by other courts, in holding that

---

[13] *Id*. Counts V and VI are brought against all defendants – Wolfington, Anderson, and Walsh. Count XI is brought only against Walsh.

[14] D.I. 10-1.

[15] 248 B.R. 493, 501 (Bankr. D. N.J., 2000).

[16] *Id*.

[17] *Id*. at 502.

courts have concurrent jurisdiction over actions brought under § 523(a)(3).[18]  As such, the Eastern District of Pennsylvania does not possess exclusive jurisdiction in making determinations of dischargeability in the instant case, as Defendant Walsh argues.

Section 523(a)(3)(B) of the Bankruptcy Code explicitly excepts discharge of an individual debtor from any debt of a specified kind as enumerated in sections 523(a)(2), (a)(4), or (a)(6), if such debt was "neither listed nor scheduled" in the debtor's bankruptcy case such that the creditor is capable of "timely request[ing] … a determination of dischargeability.[19]  The Trustee contends that "Walsh did not list or schedule his debt to MCA in his bankruptcy case; MCA did not otherwise have notice of Walsh's bankruptcy case; and Walsh's debts to MCA are based on fraud, breach of fiduciary duty, embezzlement, and/or larceny."[20]   Thus, the Trustee's § 523(a)(3)(B) discharge determination claim is timely.

B.  **The Trustee Has Sufficiently Alleged That Walsh Perpetrated Fraudulent Transfers Through Conduct Specified in Sections 523(a)(2) and (a)(4)**

This Court finds that the Trustee's Complaint sufficiently alleged that Walsh perpetrated fraudulent transfers through conduct "of the kind" specified in sections 523(a)(2) and (a)(4) in order to withstand a motion to dismiss.  The Complaint alleges,

---

[18] *See In re Webster*, No. 09-462, 2010 WL 4625736, at *2 (Bankr. D.D.C. Nov. 5, 2012) ("State and federal courts have concurrent jurisdiction over actions brought under § 523(a)(3) … "); *Haga v. Nat'l Union Fire Ins. Co. (In re Hago)*, 131 B.R. 320, 326 (Bankr. W.D. Tex., 1991) ("[J]urisdiction is not exclusive for actions brought under § 523(a)(3) because the bankruptcy court shares concurrent jurisdiction with other forums to try such claims.").

[19] 11 U.S.C. § 523(a)(3)(B).

[20] D.I. 3, ¶¶ 100-103.

among other examples, that Walsh engaged in conduct such as "transferr[ing] MCA funds to his personal bank account in excess of the compensation due to him from MCA and used MCA funds to pay personal credit card bills;"[21] in coordination with Wolfington, "wrongfully divert[ed] more than $2 million from MCA accounts to side businesses they created, owned, and controlled;"[22] and allegations of fact that "Walsh caused MCA funds to be diverted to his Insider Real Estate Entities in the midst of a deepening international financial crisis and a severe downturn in the U.S. real estate market," specifically while MCA was insolvent.[23]

Thus, the Trustee has sufficiently alleged facts showing that Walsh's conduct of the kind specified under sections 523(a)(2) and (a)(4).

## CONCLUSION

This Court has concurrent jurisdiction to determine the dischargeability of the Trustee's claims. Furthermore, the Trustee has sufficiently alleged facts demonstrating that Walsh's conduct of the kind specified under sections 523(a)(2) and (a)(4), and the Trustee has met the burden under 12(b)(6) to survive Walsh's motion to dismiss. For the aforementioned reasons, Walsh's motion to dismiss will be denied.

---

[21] *Id.* at ¶ 27.

[22] *Id.* at ¶ 28-29 ("These included multiple real estate entities … that were in the business of purchasing, renting, and reselling commercial and residential real estate.").

[23] *Id.* at ¶¶ 17, 31.